UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



**FILED**
SEP 2 5 2017
CLERK

| | |
|---|---|
| PRIMROSE RETIREMENT COMMUNITIES, L.L.C., AND RACINE RETIREMENT, L.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> OMNI CONTRUCTION COMPANY, INC., <br><br> Defendant. | 1:17-CV-01007-RAL <br><br><br> OPINION AND ORDER CONFIRMING ARBITRATION AWARD |

Plaintiffs Primrose Retirement Communities, LLC and Racine Retirement, LLC (collectively "Primrose") filed this action in state court together with a Motion to Confirm Arbitration Award and Enter Judgment Thereon, Doc. 1-1. Defendant Omni Construction Company, Inc. (Omni) removed the action to this Court. Doc. 1. Jurisdiction exists under the Federal Arbitration Act, 9 U.S.C. § 1-10, and under 28 U.S.C. § 1332, diversity of citizenship jurisdiction. Omni resisted the Motion to Confirm Arbitration Award and filed a Motion to Either Vacate or Modify the Arbitration Award, Docs. 7, 8, 9, 21. Primrose opposed that motion. Docs. 19, 20. This Court held oral argument on the motion and requested filing of the transcript and exhibits of the arbitration to more fully consider Omni's arguments in the context of the entire case. Doc. 22. The transcript and exhibits of the arbitration hearing then were filed. Docs. 23, 24. For the reasons explained herein, this Court confirms the arbitration award in favor of Primrose and denies Omni's motion to vacate or modify the award.

**I.    Summary of Material Facts**

1

Plaintiffs, which are being jointly referred to as "Primrose" in this Opinion and Order, are South Dakota limited liability corporations with their principal places of business in Aberdeen, South Dakota. Doc. 1-1 at ¶ 2. Primrose entered into a Form Agreement Between Primrose and Contractor (the Contract) with Omni on July 26, 2013, for the construction in the Village of Mount Pleasant, Wisconsin, of a 76-unit independent and assisted living facility and a four building, eight-unit independent living villas (the Project). Doc. 1-1 at 6–59. The Contract required Omni to achieve substantial completion of the entire work no later than 52 calendar weeks from date of commencement, Doc. 1-1 at 7, ¶ 3.3, and had a fixed contract sum of $7,809,540, Doc. 1-1 at 8, ¶ 4.1. The contract attached and referenced General Conditions of Contract for Construction (General Conditions). Doc. 1-1 at 6, ¶ 1; Doc. 1-1 at 13–53. Section 4.6 of the General Conditions contained valid and enforceable arbitration provisions, including § 4.6.2:

> Claims not resolved by mediation shall be decided by arbitration which unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The agreed hearing locale of any arbitration proceeding shall be at Aberdeen, South Dakota unless the parties mutually agree otherwise...

Doc. 1-1 at 31. Section 4.6.6 of the General Conditions makes any arbitration award final, allows judgment to be entered thereon, and selects South Dakota state or federal court for any action to confirm or challenge any arbitration award. Doc. 1-1 at 32.

The date of commencement of the Project was on or about August 12, 2013. Disputes arose between Primrose and Omni during construction. Omni fell behind schedule, which it blamed on the weather, other excusable neglect, and Primrose's withholding of some progress payments. Primrose and Omni discussed the importance of Omni making up time. Primrose became deeply concerned about Omni's delays, Omni's personnel turnover, days when little to

no work was being done, and Omni's varying excuses for being behind schedule. Primrose and Omni discussed as early as January of 2014 whether termination of the Contract for cause should occur, and Omni at that time assured Primrose that it could make up lost time. The parties adjusted the completion deadline. In the summer of 2014, it became clear that Omni would not complete the Project by the adjusted completion deadline. Primrose delivered its first Notice to Cure to Omni, which prompted Omni to forecast "a new and unlikely completion date" as the arbitration award put it. See Doc. 1-1 at 57. That schedule also was adjusted again. Primrose's representatives visited the Project site on October 27, 2014; found no one from Omni on site; and learned that Omni's latest of four superintendents had quit the job the previous Friday. On October 28, 2014, Primrose chose to terminate Omni's contract for cause based on Omni's breach and hired other contractors to complete the project.

Primrose then filed a demand for arbitration under Section 4.6 of the General Conditions seeking various damages and relief. Omni answered and counterclaimed seeking damages from Primrose under a number of claims and theories. The parties conducted discovery, including depositions taken of each other's key witnesses and experts.

A three arbitration panel—James Duffy O'Connor, an attorney and the chair of the Construction Law Group of Maslon Edelman Borman & Brand, LLP; John G. Patterson, an attorney in the construction law practice of Fredrikson & Byron, P.A.; and William M. Beadie, a construction, contracts and construction surety lawyer at Moore, Costello & Hart, P.L.L.P—convened in Aberdeen for a five day evidentiary arbitration hearing from December 6 to December 10, 2016. The arbitrators heard from nine witnesses testifying live at the hearing, considered three video depositions together with deposition transcripts, and received thousands of pages of exhibits contained in some ten three-ring binders. The transcript of the arbitration

3

hearing is 1,676 pages long. Review of the transcript and materials from the arbitration makes clear that both sides were given an ample opportunity to present their evidence, case and arguments.

The Scheduling Order issued by the arbitrators on December 3, 2015, prior to the arbitration stated in Paragraph 17:

> The arbitrators shall issue reasoned awards for both cases[1] unless the parties agree otherwise. A "reasoned" award means that the arbitration will set out a brief summary of the principal reasons supporting their award(s), but shall not include findings of fact or conclusions of law.

Doc. 9-3 at ¶ 17. On March 15, 2017, the arbitrators issued a six-page Final Award of Arbitrators. Doc. 1-1 at 54–59. The Final Award found that "Omni breached the Contract by substantially falling short of completing their work within the Contract time, and that Primrose was justified in terminating Omni for cause." Doc. 1-1 at 55. The arbitrators addressed and rejected Omni's excuses for its delays. Doc. 1-1 at 55–57. Although the arbitrators found that "Omni suffered some excusable delay because of unusually severe weather, the extent of the delay falls substantially short of the number of days Omni claims." Doc. 1-1 at 56. The arbitrators found Omni's final forecasted completion date to be unrealistic and that "[t]he percentage of completion referenced in the Pay Applications leading up to the date of Omni's termination, were not binding on the parties, were disputed and were not the most reliable measure of the remaining Work." Doc. 1-1 at 57–58. The arbitrators rejected some of Primrose's arguments, including that Omni's claims were untimely and that Primrose sustained damage from Omni filing an incorrect and overstated lien claim. Doc. 1-1 at 58. The arbitrators did not grant Omni relief on any of its counterclaims. Doc. 1-1 at 54.

---

[1] The parties have a dispute concerning another project that is subject to arbitration.

4

The arbitrators awarded Primrose "$767,119.14 for Primrose's excess costs to complete the Project plus interest at the [contractual] rate of 18% per annum from September 26, 2015 until paid" and "Primrose's attorney's fees of $224,443.58 plus its costs and disbursements of $61,509.63 for [a] total of $285,953.21." Doc. 1-1 at 54. Omni was ordered to promptly satisfy, remove and discharge its mechanics lien filed against Primrose's property for this Project. Doc. 1-1 at 54. The AAA administrative fees and arbitrators' fees were to be split between the parties. Doc. 101 at 54.

Primrose has filed a motion to confirm the arbitration award. Doc. 1-1. Omni has filed a motion to either vacate or modify the arbitration award. Doc. 7. Omni asserts that the arbitration award should be vacated because the arbitrators "were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy" under 9 U.S.C. § 10(a)(3). Specifically, Omni first complains that on the final day of the arbitration, the arbitrators refused to hear evidence from Primrose's expert Robert Sniegowski; after Omni had rested its case and Primrose chose not to call its construction scheduling expert Sniegowski in rebuttal, the arbitrators chose not to allow Omni to call Sniegowski adversely but instead considered Sniegowski's deposition testimony offered by Omni. Second, Omni contends that the arbitrators refused to hear evidence when sustaining objections during Omni's cross-examination of Primrose's witness Joe Hawkins. Third, Omni considers it a refusal to hear evidence that the arbitrators did not account for Omni having paid bond claims. And, fourth, Omni argues that the arbitrators ignored or refused to consider improper completion cost claims of Primrose. Docs. 7, 8. Omni also asserts that the arbitrators failed to make a "mutual, final and definite award" under 9 U.S.C. § 10(a)(4) and committed computational errors under 9 U.S.C. § 11(a) when not discounting the award by

5

Omni's payments on bond claims or amounts Omni considers to be excessive completion costs. Doc. 7, 8.

## II. Discussion

### A. Standard of Review Under Federal Arbitration Act

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., the district court "'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed'" in the FAA. Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008) (quoting 9 U.S.C. § 9). An arbitration award can be vacated only if (1) the award "was procured by corruption, fraud, or undue means"; (2) the arbitrator was impartial or corrupt; (3) the arbitrator was "guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown," or refuses to hear certain evidence, or otherwise prejudices the rights of a party; or (4) the arbitrator exceeded his own power. 9 U.S.C. § 10. These four grounds constitute the exclusive justifications for vacating an award. Medicine Shoppe Int'l., Inc. v. Turner Invs., Inc., 614 F.3d 485, 489 (8th Cir. 2010).

A district court "affords the arbitrator's decisions an extraordinary level of deference and confirms so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." Wells Fargo Bank, N.A. v. WMN e-PIN, LLC, 653 F.3d 702, 710 (8th Cir. 2011) (quoting Crawford Group, Inc. v. Holekamp, 543 F.3d 971, 976 (8th Cir. 2008)). "Courts have no authority to reconsider the merits of an arbitration award, even when the award rests on factual errors or on a misinterpretation of the underlying contract." Medicine Shoppe, 614 F.3d at 488. Because this Court lacks authority to review the merits of the arbitration award, review is limited to whether any grounds to vacate or modify exist under 9 U.S.C. § 10 or § 11.

### B. Omni's Arguments to Vacate or Modify

#### 1. Robert Sniegowski Testimony

Robert Sniegowski was Primrose's expert on construction scheduling matters. Sniegowski had written an expert report disclosed to Omni and underwent a deposition conducted by Omni's counsel. The arbitration which had begun on Tuesday, December 6, had stretched into the morning of Saturday, December 10, with Omni still presenting its case in chief. When Omni rested, Primrose, which had planned to call Sniegowski as a rebuttal witness, opted to introduce Sniegowski's report in lieu of calling him. By that point, Sniegowski had a plane to catch and a winter storm was threatening. Upon hearing that Sniegowski was not going to testify, Omni then wanted to call Sniegowski as an adverse witness in what would be either the re-opening of its case in chief or its rebuttal case. Primrose had presented one brief rebuttal witness, but Omni's apparent interest in calling Sniegowski appears to have had little connection to Primrose's rebuttal case. Primrose objected to Omni calling Primrose's expert under those circumstances. The arbitrators probed why Omni wished to call Primrose's expert under the circumstances and chose to receive as evidence, over Primrose's objection, the transcript of Omni's deposition of Sniegowski. Omni believed that Sniegowski made concessions during that deposition helpful to Omni's case. Before this Court, Omni asserts that Sniegowski if questioned in the arbitration by Omni might have given further testimony helpful to Omni. Thus, Omni argues that the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy" contrary to 9 U.S.C. § 10(a)(3).

An arbitration award may be vacated under 9 U.S.C. § 10(a)(3) when an arbitrator "refus[ed] to hear evidence pertinent and material to the controversy." However, "[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of

an arbitrator's award." Hoteles Condado Beach v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985); see also, Lunsford v. RBC Dain Rauscher, Inc., 590 F.Supp.2d 1153, 1156 (D. Minn. 2008) ("To warrant vacation of an award, an arbitrator's refusal to hear evidence must either be in 'bad faith or so gross as to amount to affirmative misconduct.'" (quoting United Paperworks Int'l Union v. Misco, Inc., 484 U.S. 29, 40 (1987))). In conducting arbitration hearings, "[a]rbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong the proceedings." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997). "In making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts." Id. at 20 (internal quotations and citations omitted). Indeed, the United States Court of Appeals for the Eighth Circuit has stated "an error that requires the vacation of an award must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." Grahams Serv., Inc. v. Teamsters Local 975, 700 F.2d 420, 422 (8th Cir. 1982) (internal quotation marks and citations omitted).

A review of the record reveals that Primrose and Omni both received a fair arbitration hearing. The arbitrators' decision to receive the transcript of Sniegowski's deposition taken by Omni's counsel (as Omni had offered and over Primrose's objection) in lieu of live testimony did not so adversely affect the rights of Omni such that Omni "was deprived of a fair hearing." See Grahams Serv., 700 F.2d at 422. Indeed, Omni was able to point to matters in Sniegowski's deposition testimony that Omni believed was helpful to it. The arbitrators did not truly refuse to hear evidence in that the arbitrators received Sniegowski's report and deposition testimony of Sniegowski conducted by Omni's counsel. Rather, the arbitrators refused to let Omni prolong the arbitration by calling Primrose's expert in a rebuttal case (though Sniegowski's testimony

8

was truly not rebuttal of Primrose's brief rebuttal witness) in the speculative hope that Omni could elicit some other admission to turn around an arbitration where Omni was losing. With bad weather approaching, the expert having a plane to catch, and the receipt into evidence of the deposition transcript from which Omni could make its arguments, the decision of the arbitrators was not the sort of misconduct to justify vacatur of the award under 9 U.S.C. § 10(a)(3).

Omni argues that had the arbitrators considered Sniegowski's deposition, they could not have found: 1) that Primrose had substantial work to do on the Project after Omni's termination; 2) that state inspection issues did not contribute to delaying the Project along its critical path; or, 3) that Primrose was entitled to all of its claimed completion costs. Doc. 8 at 17. However, Omni's contention that Sniegowski's deposition testimony would foreclose such findings is incorrect. First, Sniegowski testified that in his opinion the project completion estimate in Omni's Pay Application No. 14 (described as 89 percent, and a central component of Omni's argument it had completed much more of the project than as alleged by Primrose) was overstated. In fact, Sniegowksi believed that the project completion was closer to 81 percent as of September 30th, 2014. Doc. 24 (Sniegowski Dep. Tr. at 33–34). Second, Sniegowski's testimony was that the delays that arose from inspection issues were all concurrent with delays for which Omni was responsible. Doc. 24 (Sniegowski Dep. Tr. at 79–80). Finally, Sniegowski's testimony does not provide evidence which would require a finding by the arbitrators that Primrose's claimed costs of completion were excessive.

> BY [Omni's counsel]:
> Q. So for the work that we just listed, Primrose incurred roughly $2.3 million. Does that sound reasonable to you? That's over a third of the total contract sum, of the initial contract sum. And by your own admission the project was 81 percent complete as of September 30.
> [Primrose's counsel]: I have to object to the form of that question or questions.

9

> [Omni's counsel]: Yeah, it got kind of long-winded. Unfortunately, I think Mr. Sniegowski was following me.
> THE WITNESS: That certainly does sound like a lot of money. However, whenever I have been involved in projects that were I'm going to say difficult projects or terminations, those costs of completing the project tend to be more than they would be had the contractor finished the project themselves.

Doc. 24 (Sniegowski Dep. Tr. at 54–55).

While some of Sniegowski's deposition testimony may have arguably been helpful to Omni in some respects, contending that it precludes the arbitrators' findings, as Omni has done, is simply incorrect. Sniegowski's deposition testimony certainly did not foreclose the arbitrators from making the findings that they did, and provides no basis for this Court to conclude that those arbitrators engaged in misconduct that would justify vacatur of the award.

### 2. Sustaining Objections During Hawkins Testimony

Omni next argues that the arbitrators refused to hear evidence pertinent and material to the controversy by sustaining objections to questions Omni asked Primrose's witness Joe Hawkins. Hawkins, Primrose's Director of Construction Services, testified in Primrose's case in chief and was cross-examined for several hours by Omni. The transcript of Hawkins's cross-examination extends for more than 100 pages. Omni during the arbitration asserted that the Project was more complete at the time Omni was terminated than Primrose contended, and Omni relied on Omni's Payment Application No. 14, on which Hawkins had signed, as evidence that the Project was 89% complete prior to Omni's termination. The parts of Hawkins' cross-examination pertinent to Omni's arguments read:

> BY [Omni's counsel]:
> Q. And according to payment application 14, despite all the delays which you claim were exclusively OMNI's fault, OMNI say it was 89 percent complete as of September 30, 2014, right?
> A. That's what they stated, yes.

10

Q. Okay. Now, before Primrose and/or its architect would sign off on a payment application, it would undertake its own analysis and review and inspection, right?
A. That's correct.
Q. And that certainly was done in this case?
A. Correct.
Q. In fact, it was doubled up, because you did an inspection yourself, right?
A. Yes.
Q. And as a result of WAI's inspection and your inspection, Primrose certified that OMNI, in fact, had completed 89 percent of this work as of September 30, right?
A. We were doing everything that we could to keep the project moving forward with the controls we had, so yes, we did approve it.
Q. And that's your signature on payment application 14; isn't it?
A. Yes.
Q. And that's the signature of your architect, as well?
A. That's correct.
Q. And that certification reads, "certifies that based on their own observations and review of the contract documents and the information contained herein," your architect was certifying that 89 percent of the work was done?
A. We were trying to keep payment going on the project. We didn't believe the project was 89 percent complete.
Q. Now, you gave this payment application to your lender in order to obtain the release of funds, right?
A. We did.
Q. You wouldn't deliberately mislead your lender, would you?
A. It was in everybody's best interest –
[Primrose's counsel]: Objection.
[An arbitrator]: Sustained
THE WITNESS: -- to process this.
[An arbitrator]: Come on, move on.
BY [Omni's Counsel]:
Q. But you certified to the lender that the project was 89 percent complete, right?
[Primrose's counsel]: Asked and answered.
THE WITNESS: That's correct.

Doc. 9-4 at 2. The sustaining of an objection here made no difference to anything. Witness Hawkins actually responded to the question through the objection, and the point that Hawkins had signed off on the pay application and submitted it to Primrose's lender had been made.

The cross-examination continued as follows:

BY [Omni's counsel]:

11

Q. It's your current position, is it not, Mr. Hawkins, that OMNI was only 75 percent complete as of the end of October?
A. I believe that's what I've stated, yes.

Doc. 9-4 at 3.

Q. Mr. Hawkins, you supplied the answer to Interrogatory Number 28, right?
A. That's correct.
Q. And in the answer you say you now estimate that the Racine project was only 75 percent complete as of October 29, 2014, right?
A. That's correct.
Q. So have you decided that you gave misinformation to Primrose's lender back in 2014 –
[Primrose's counsel]: Objection to those same phrases.
[Omni's counsel]: -- when Primrose certified 89 percent completion?
[An arbitrator]: I didn't hear. Restate the question.
BY [Omni's counsel]:
Q. Is it – now your position that you gave inaccurate information to your lender back in 2014 when Primrose certified 89 percent complete?
[Primrose's counsel]: Same objection as previously stated.
[An arbitrator]: Well, go ahead and answer.
THE WITNESS: We were doing anything that we could to keep the project going. That's why we certified the pay application.
BY [Omni's counsel]:
Q. You believe the pay application was accurate when you submitted it to your lender, did you not?
A. No. Not 89 percent complete.
Q. So you deliberately gave your lender misinformation?
[Primrose's counsel]: Objection.
[An arbitrator]: Sustained. Move on.
BY [Omni's counsel]:
Q. When did you do this reassessment to arrive at 75 percent?
A. We did – we did one around the time of our site visits in October, and then doing our schedule analysis from the DFRs and the site photos, to help us understand where the project was at at that time.
Q. So you're saying you did this reassessment before you certified payment application 14? And to help you out, you certified payment application 14 on November 6, 2014. Are you saying that you did this reassessment at 75 percent prior to that time?
A. No. We did the reassessment here recently.
Q. Okay. So only two years later that you decided that OMNI was only 75 percent complete?
A. We verified that they were 75 percent complete, yes.
Q. And how did you do this reassessment two years after the fact?
A. With the DFRs, with site photos of both interior and exterior.

Doc. 9-4 at 3.

By sustaining these objections, Omni argues, it was prevented from eliciting testimony from Hawkins whereby "he likely would have admitted that he never misrepresented percentage of completion to Primrose's lender, thereby admitting that the Project was 89% complete an entire month prior to Omni's termination..." Doc. 8 at 18. However, Hawkins made clear in the testimony quoted that he did not believe the project was 89 percent complete but was about 75 percent complete. Moreover, the arbitrators directly questioned him on this very point:

> BY [an arbitrator]:
> Q.   ...as of October or November when this pay app was signed, what percentage complete did you at that time think they had achieved?
> A.   It was hard to gather exactly what the number was, but I mean it was around 75 percent. There was still a lot of things to complete throughout the building.
> Q.   I know that's what you've determined looking back, but as of that time, November, early November before this app was signed off, did you have in mind what percentage complete they were?
> A.   Yeah, it was roughly there, yeah.
> Q.   75?
> A.   Yes.

Doc. 23-2 at 24

Another arbitrator further clarified:

> BY [an arbitrator]:
> Q.   So when you signed pay app 14, you knew it wasn't 89 percent, right?
> A.   Yes
> Q.   At that time, did you know it was a different percentage, or you just hadn't looked at it close enough to determine that?
> A.   We knew it was a different percentage.
> Q.   And closer to 75?
> A.   Yes.

Doc. 23-2 at 24.

Omni introduced as evidence Omni's Payment Application No. 14 and was allowed to establish that Hawkins signed the payment application. The arbitrators did not refuse to hear

13

relevant and material evidence by sustaining the two objections, and in fact they questioned Hawkins on the very point Omni claims it was not allowed to make. Omni certainly was not deprived of a fair hearing by virtue of not being allowed to badger Hawkins. The arbitrators' sustaining of those two objections, when taken in context of the long cross-examination was not even close to the sort of misconduct to justify vacatur of the award. See Graham Servs., 700 F.2d at 433; see also Tempo, 120 F.3d at 19; Hoteles Condado Beach, 763 F.2d at 40.

### 3. Omni's Payment of Bond Claims

Omni next argues that the arbitrators refused to hear evidence, failed to give a reasoned decision, or committed a computational error when not addressing Omni's evidence that it paid $419,017.14 in bond claims made by subcontractors and suppliers. Omni asserts that its payment of the bond claims was uncontroverted and not disputed by Primrose. At core, Omni's argument about treatment of bond claim payments is an attack on the merits of the arbitrators' ruling that this Court cannot use to vacate or modify the ruling. See Medicine Shoppe, 614 F.3d at 488.

Omni's payment of $419,017.14 in bond claims was evidence that the arbitrators heard. TR 1556, 1568, 1571–74; Arb. Ex. 156; Arb Ex. 177. However, Omni was obliged to pay its subcontractors and suppliers out of what Primrose paid Omni. Omni prior to termination received about $6,257,597.48 of the contract amount to pay subcontractors, suppliers and itself for work on the Project. There was no contractual provision that obligated Primrose to reimburse Omni when subcontractors or suppliers filed bond claims or when Omni paid those bond claims. The arbitrators' ruling directly addressed why Primrose was justified in terminating the contract when it did, why Omni's arguments about justifiable delays did not entitle Omni to continue under the contract, why Omni's assertions of the extent of contract completion were incorrect,

and how much Primrose paid and Omni in turn owed for additional costs to complete the Project. Doc. 1-1 at 54–59. The fact that the arbitrators' ruling did not address Omni's payment of bond claims does not establish a refusal to hear evidence, failure to give a reasoned decision, or a computational error.

### 4. Primrose's Completion Costs

Omni's final assertion of a refusal to hear evidence, failure to give a reasoned decision, or computational error involves the arbitrators' award of $767,119.14 to Primrose in costs to complete the Project exceeding the remaining amount on the contract. When the contract was terminated, $1,551,942.52 remained to be paid out of a contract sum of $7,809,540. Primrose's evidence was that to complete the Project, it used the remaining $1,551,942.52 plus had to pay an additional $767,119.14. Omni asserts that this amount is excessive and challenges in particular $176,394.47 of costs that Omni views as especially questionable. Again, Omni's argument about excess costs of completion at core is an argument about the merits of the arbitrators' ruling that cannot be used at this stage to justify vacating or modifying the ruling. See Medicine Shoppe, 614 F.3d at 488.

The arbitrators did not refuse to hear evidence concerning Omni's criticism of Primrose's completion costs claims. Indeed, Omni cross-examined Primrose's primary witness on completion costs, B.J. Schaefbauer, for several hours as demonstrated by the 147 pages of the transcript.[2] The arbitrators' ruling determined that Primrose's evidence and Schaefbauer's

---

[2] Similar to Sniegowski's testimony, Omni alleges the arbitrators could not have found Primrose's claimed completion costs to be properly included based on the evidence, and thus assert the arbitrators ignored and refused to hear evidence regarding improper charges. Doc. 8 at 19. For instance, Omni points to a $15,000 exterior caulking charge that it claims Schaefbauer admitted was a mistake and not within Omni's scope of work under the contract. Id. But this is a mischaracterization of his testimony. While being questioned on the invoice that listed the expense for exterior caulking, Schaefbauer stated that the invoice was incorrect and that the

15

testimony "adequately satisfied Primrose's burden of proving Primrose's claimed costs of completion of the work after Omni's termination, and are recoverable under the terms of the Parties' Contract: $767,119.14." Doc. 1-1 at 58. Nor is the arbitrators' ruling subject to modification for a computational error. Omni did not raise any claim of computational error under Rule 51 of the American Arbitration Association Rules, which requires such a request to be made within 20 days of transmittal of the award. Rather, the arbitrators' award reflects a merits-of-the-claim decision based on what evidence the arbitrators found credible and persuasive. A court cannot supplant the arbitrators' decision in that regard, even if there might be reasons to question part of the award. "Courts have no authority to reconsider the merits of an arbitrator's award, even when the parties allege that the award rests on factual errors or on a misinterpretation of the contract." Medicine Shoppe, 614 F.3d at 488.

Omni also asserts that the arbitrators failed to provide a reasoned decision, as they had agreed to do in a scheduling order. Thus Omni argues that there was no "mutual, final and definite award" under 9 U.S.C. § 10(1)(4). The arbitrators in fact provided a final and definite award in a six-page reasoned decision. Doc. 1-1 at 54–59. Vacating or modifying the award cannot be based on Omni's dissatisfaction that the arbitrators did not embrace Omni's positions or devote more of the decision to explaining why Omni lost. The Federal Arbitration Act and case authority directs that this Court affirm the award. 9 U.S.C. § 1-11.

---

charge had been for interior caulking. Doc. 23-3 at 22. While he agreed that a charge for exterior caulking would be improper, he directly refuted the impropriety of this charge despite the invoice description, stating "I know what it says. I'm telling you it was a mistake on their part when they did the invoice." Id. Omni's claim that Schaefbauer admitted this charge was improperly included is mistaken and contrary to Schaefbauer's actual testimony. The 147 pages of transcript show that Schaefbauer was questioned by Omni's counsel on the various charges Omni asserts were improper, and Schaefbauer refuted Omni's contentions of impropriety. The fact that the arbitrators believed Schaefbauer does not prove a refusal to hear evidence depriving Omni of a fair hearing.

### III. Conclusion and Order

For the reasons explained above, it is hereby

ORDERED that Primrose's Motion to Affirm the Arbitration Award, Doc. 1-1, is granted and that Omni's Motion to Vacate or Modify the Award, Doc. 7, is denied.

DATED this 25th day of September, 2017.

BY THE COURT:

*[signature]*
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE